IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOCTORS MEDICAL CENTER OF MODESTO, INC., a California corporation<br><br>Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., a California corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | 1:12-CV-01381 AWI SMS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE THIRD, FOURTH, FIFTH, AND SIXTH CAUSES OF ACTION AND REMANDING CASE<br><br>(Doc. No. 11) |

On July 17, 2012, Plaintiff Doctors Medical Center of Modesto, Inc. (the "Hospital") filed a Complaint in the Stanislaus County Superior Court against Defendants Kaiser Foundation Health Plan, Inc. ("Kaiser") and Does 1 through 25.  The Complaint seeks reimbursement for health care treatment rendered to six Kaiser members.[1]  The Complaint alleges the care provided to Patients 1 through 5 is covered under its commercial contracts with Kaiser.  Patient 6, however, was enrolled under a Kaiser Medicare Advantage plan, and the Hospital seeks reimbursement under the Medicare Act as well as pursuant to California law.  The first cause of action alleges a breach of contract as to Patients 1-2.  The second cause of action alleges breach of contract as to Patients 3-5.  The third cause of action alleges breach of contract as to Patient 6. The fourth cause of action alleges violations of 42 U.S.C. § 1395w-22(d)(1)(C) and (E), 42

---

[1] The six patients are identified anonymously in the Complaint to preserve their protected right of privacy.

C.F.R. § 422.113(b)(2), Health and Safety Code § 1371.4(b), and 28 C.C.R. § 1300.71.4(a), as to Patient 6.  The fifth cause of action alleges the Hospital has kept an accurate accounting of the services rendered to Patients 1 through 6, and that one or more items are unsettled.  The sixth cause of action alleges the Hospital sent invoices to Defendants and that Defendants agreed with the Hospital on the amount due from them, and expressly and/or impliedly promised to pay the amounts due.

On August 22, 2012, Kaiser removed the action to this court based on federal question jurisdiction under the Medicare Act, 42 U.S.C. § 1395 *et seq*.  On October 9, 2012, Kaiser filed the instant motion to dismiss the third, fourth, fifth, and sixth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  *See* Court's Docket, Doc. No. 11.  For the reasons stated herein, that motion will be granted.

## ALLEGED FACTS

The Hospital is an acute care medical facility located in the city of Modesto, California.  Compl. ¶ 1.  Kaiser is a California corporation and a licensed health care service plan.  *Id.* ¶ 2.  Kaiser has entered into a contract with the federal Medicare program administered by the Centers for Medicare and Medicaid Services ("CMS") and the Social Security Administration ("SSA") (the "Medicare contract"), to cover Medicare recipients who enroll in Kaiser's Medicare Advantage ("MA") plan.  *Id.* ¶ 60.  Patient 6 is a member of Kaiser's MA plan.  *Id.* ¶ 65-66.

Patient 6 presented to the Hospital's emergency room following injuries sustained during a drunk driving accident in which Patient 6 was a passenger in a car driven by a person who was arrested for driving under the influence and/or driving while intoxicated.  *Id.* ¶ 65.  The Hospital notified Kaiser of Patient 6's admission, verified Patient 6's eligibility as a Kaiser MA plan member, and requested authorization for treatment.  *Id.* ¶ 66.  Kaiser informed the hospital that

---

[2] By this motion, Kaiser does not move to dismiss the Hospital's causes of action seeking reimbursement for non-Medicare enrollee Patients 1-5, i.e., the first or second causes of action, or the fifth or sixth causes of action to the extent they seek reimbursement for treatment rendered to Patients 1-5 only.

2

no authorization was needed because Patient 6's admission was emergent. *Id.* The Hospital provided Patient 6 medically necessary and physician-ordered medical services for four inpatient days at the intensive care unit level of care for treatment of a traumatic brain injury. *Id.* ¶ 65.

Thereafter, the Hospital billed Kaiser for medical services rendered to Patient 6 and expected total reimbursement of $17,335.65 for the services provided under the Medicare rate. *Id.* ¶ 67. Kaiser requested information from the Hospital and Patient 6 about any potential automobile insurance policy that Patient 6 may have had at the time of the accident. *Id.* ¶ 68. Patient 6 did not respond to Kaiser's request for such information due to the severity of her injuries, from which she ultimately died. *Id*. The Hospital was unable to provide any information regarding Patient 6's automobile insurance policy and had no means of obtaining such information. *Id.* In response to the Hospital's inquiries regarding payment, Kaiser repeatedly informed the Hospital that it had "pended" payment on the claim until it finished its investigation of the possible availability of other insurance which might be primary. *Id.* ¶ 69. Kaiser never discovered any information to indicate that Patient 6 was the car owner or driver, or that any party involved in the accident had automobile insurance that covered the health care services Patient 6 received. *Id.* ¶ 71. Kaiser failed to pay the Hospital's claim for reimbursement as to Patient 6, despite written appeals requesting further payment. *Id.* ¶ 71-73.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); see Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility," and thus survives a motion to dismiss, "when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009). On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences. *Daniels–Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir.2010). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

## DISCUSSION

Kaiser contends the Medicare Act does not create a private right of action allowing providers to sue to recover from MA organizations like Kaiser.  Therefore, Kaiser argues, the Hospital cannot bring suit as a third-party beneficiary to Kaiser's federal Medicare contract. Kaiser contends the Hospital also cannot rely on state statutes or regulations to recover, as these laws are expressly preempted by the Medicare Act and CMS regulations.  Similarly, Kaiser argues the MA statute and regulations expressly preempt the Hospital's state common law recovery claims because they depend on a determination of whether the services rendered are covered benefits under the Medicare Act.  Finally, Kaiser contends the Hospital was required to present the plan coverage dispute to the Medicare administrative grievance and appeals process for review and a final decision before suing in federal court.  Because the Hospital did not exhaust its administrative remedies, Kaiser argues its third and fourth causes of action, as well as its fifth and sixth causes of action insofar as those causes of action seek recovery for the treatment of Patient 6, should be dismissed.

The Hospital does not oppose Kaiser's motion to dismiss the third cause of action for

breach of the Medicare contract and fourth cause of action for violation of federal and state statutes. *See* Court's Docket, Doc. No. 15 at n.1. Accordingly, the Court will grant Kaiser's motion to dismiss those claims. However, the Hospital contends that exhaustion of administrative remedies under the Medicare Act is not a prerequisite to bringing its fifth cause of action for open book account and sixth cause of action for account stated.

A.  **Timeliness**

As a preliminary matter, the Hospital contends that Kaiser's motion is untimely. On August 27, 2012, the parties filed a stipulation extending Kaiser's time to respond the Complaint "up to and through Monday, September 24, 2012." *See* Court's Docket, Doc. No. 7. On September 20, 2012, the parties filed a second stipulation further extending Kaiser's time to respond "up to and through Monday, October 8, 2012." *See* Court's Docket, Doc. No. 9. Kaiser filed the instant motion to dismiss on Tuesday, October 9, 2012. The Hospital contends the motion is therefore untimely. October 8, 2012, however, was Columbus Day, a legal holiday. *See* Fed. R. Civ. P. 6(a)(6). Under Federal Rule of Civil Procedure 6, when calculating a filing deadline, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Accordingly, the Court finds that Kaiser's motion was timely.

B.  **Applicability of the Medicare Act to the Fifth and Sixth Causes of Action**

The Medicare program, which provides medical insurance for the aged and disabled, is administered by CMS, a division of the U.S. Department of Health and Human Services ("HHS"). The Medicare Act, 42 U.S.C. §§ 1395-1395ggg (2000), consists of three parts, labeled Parts A, B, and C. Congress established the MA program under Part C, 42 U.S.C. §§ 1395w-21 to 2395w-28. The MA program allows eligible individuals to elect to receive Medicare benefits directly from a private health plan, such as Kaiser. 42 U.S.C. §§ 1395w-21, -22. Under the MA program, instead of using the Part A traditional fee-for-service program, HHS pays MA organizations like Kaiser on a monthly, or capitated, basis for each Medicare beneficiary enrolled

5

in the plan. 42 U.S.C. §§ 1395w-21, -23 & -24. Because the MA organization receives the same payment regardless of the number of times an enrollee needs care, Medicare's financial exposure is transferred to the MA plan. 42 U.S.C. § 1395w-22(a)(2))(A). The amount of the monthly payment is based on the contract between the MA organization and CMS. 42 U.S.C. § 1395w-27.

The Medicare Act requires MA plans to cover emergency services provided by non-contracted providers, like the Hospital. 42 U.S.C. § 1395w-22(d)(1)(E). Payment amounts due to a non-contracted emergency provider are limited to what "the provider would collect if the beneficiary were enrolled in original Medicare." 42 C.F.R. § 422.214(a). The Medicare Act further provides that where the MA organization is made a secondary payer, as defined by 42 U.S.C. § 1395y(b)(2)(A), the MA organization may charge the primary plan. 42 U.S.C. § 1395w-22(a)(4); 42 C.F.R. § 422.108. An MA organization becomes a secondary payer where "payment has been made or can reasonably be expected to be made . . . under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)((2)(A)(ii).

Title 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that 42 U.S.C. § 405(g) is "the sole avenue for judicial review" for claims "'arising under' the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 614-15, 104 S. Ct. 2013 (1984). CMS regulations provide an administrative appeal process that allows a provider that furnishes services to an enrollee to request an "organization determination," a determination "with respect to . . . [p]ayment for any . . . health services furnished by a provider other than the MA organization that the enrollee believes are covered under Medicare." 42 C.F.R. § 422.566(b)(2)(I). After the MA organization renders its organization determination regarding payment, any party to the organization determination, including "[a]ny other provider or entity (other than the MA organization) determined to have an appealable interest in the proceeding," may seek reconsideration of the organization determination. *Id.* §§ 422.574, 422.582. After

reconsideration of the organization determination, any party to the reconsideration may request a hearing before an administrative law judge ("ALJ").  *Id.* § 422.600.  After the ALJ renders a decision, any party to the hearing may request a review by the Medicare Appeals Council.  *Id.* § 422.608; *see* RJN, Exs. 1, 2.[3]  After the Medicare Appeals Council makes its final decision, a party may seek judicial review in federal court.  42 U.S.C. § 405(g); 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.612(c).

With respect to its remaining state common law claims for open book account and account stated, the Hospital argues that those claims do not "arise under" the Medicare Act and are therefore not subject to its exhaustion requirements.  In support of this argument, the Hospital relies on *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555 (5th Cir. 2004).  In *RenCare*, a provider of kidney dialysis services sued an MA organization for reimbursement for services provided to the MA organization's members under a contract between the provider and the MA organization.  *Id.* at 556.  The district court dismissed the provider's claims on the basis that it had failed to exhaust administrative remedies under the Medicare Act.  *Id.* at 556-57.  The Fifth Circuit reversed, holding that because the provider's claims for breach of contract, detrimental reliance, fraud, and violations of state law were not "inextricably intertwined with a claim for Medicare benefits," those claims did not arise under the Medicare Act.  *Id.* at 560.  In reaching its decision, the Fifth Circuit emphasized that under Part C, "the [MA] organization assumes responsibility and full financial risk for providing and arranging healthcare services for [MA] beneficiaries . . . , sometimes contracting health care providers to furnish medical services to those beneficiaries . . . .  Such contracts between [MA] organizations and providers are subject to very few restrictions . . . ; generally, the parties may negotiate their own terms."  *Id.* at 559

---

[3] Kaiser requests judicial notice of two Medicare Appeals Council adjudication decisions involving disputes between providers and MA organizations over Medicare reimbursement.  *See* Court's Docket, Doc. No. 13.  The Hospital did not object to Kaiser's request.  Public documents are the proper subject of judicial notice.  *See* Fed. R. Evid. 201(b); *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986); *Fortaleza v. PNC Fin. Serv. Grp., Inc.,* 642 F.Supp.2d 1012, 1019 (N.D.Cal.2009).  The Court therefore grants Kaiser's request.

(internal citations omitted).  Accordingly, the Fifth Circuit found that the only interest at issue was the provider's in receiving payment under its privately-agreed-to contract with the MA organization, and therefore the MA organization's failure to pay the provider was not an "organization determination" subject to the mandatory exhaustion requirement.  *Id.* at 560.

In this case, by contrast, the Hospital does not allege that it had an express written contract with Kaiser to provide emergency services to Kaiser's MA enrollees like Patient 6.  In fact, the *RenCare* case is more akin to the disputes regarding reimbursement for Patients 1 through 5, whose medical services were provided under an express written agreement pursuant to which the Hospital was obligated to provide hospital services at discounted rates to members of Kaiser.  Compl. ¶¶ 8-9.  In the case of Patient 6, however, the dispute over Kaiser's payment obligation turns on the standards provided by the Medicare Act and CMS regulations for paying non-contracted emergency providers when a primary payer may be liable.  *See* 42 U.S.C. § 1395w-22(d)(1)(E); 42 C.F.R. §§ 422.214, 422.108, and 422.566.  Although, as in *RenCare*, the government's risk has been extinguished by its monthly capitation payments to Kaiser, the Hospital's claims for reimbursement as to Patient 6 are still "inextricably intertwined" with the Medicare Act and are subject to its exhaustion requirements.  *See Heckler*, 466 U.S. at 615, 104 S. Ct. at 2021; *Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 (9th Cir. 2010).

The Hospital argues that its fifth and sixth causes of action for open book account and account stated do not require any determination as to benefits under the Medicare program, and it is "at bottom not seeking to recover benefits."  *See Uhm*, 620 F.3d at 1145; Ardary *v. Aetna Health Plans of Cal., Inc.*, 98 F.3d 496, 500 (9th Cir. 1996).  These claims, however, are not "wholly collateral" to a claim for benefits, like the wrongful death claim in *Ardary* or the fraud and consumer protection claims in *Uhm*.  Instead, although they are styled as state common law claims, the fifth and sixth causes of action seek reimbursement for emergency services furnished by a non-contracted provider to an MA plan beneficiary.  The Court therefore finds that the Hospital cannot avoid the Medicare Act's exhaustion requirement with respect to the fifth and

8

sixth causes of action as to Patient 6. Accordingly, Kaiser's motion to dismiss the fifth and sixth causes of action as to Patient 6 shall be granted.

**C.   Remand**

The basis for removal to this Court was the presence of a federal question. However, the Court has dismissed the Hospital's federal claims. When removal is based on the presence of a federal cause of action, a district court may remand the pendent or supplemental state law claims to the state court once the federal claims have been eliminated. *See Sever v. Alaska Pulp Co.*, 978 F.2d 1529, 1539 (9th Cir. 1992). In fact, "it is generally preferable for a district court to remand remaining pendent claims to state court." *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991). All federal claims have been resolved and only state law claims remain. The Court will therefore remand the remaining state law claims to the Stanislaus County Superior Court.

**CONCLUSION AND ORDER**

Accordingly, IT IS HEREBY ORDERED THAT:

1.   Defendant Kaiser Foundation Health Plan, Inc.'s Motion to Dismiss (Doc. No. 11) is GRANTED;

2.   The Third and Fourth Causes of Action are DISMISSED;

3.   The Fifth and Sixth Causes of Action are DISMISSED as to Patient 6 only;

4.   The Clerk shall immediately REMAND this case to the Stanislaus County Superior Court.

IT IS SO ORDERED.

Dated:   February 13, 2013

SENIOR DISTRICT JUDGE